UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Vickie Sherman,<br>     *Plaintiff*, | Civil No. 3:10cv694 (JBA) |
| *v.* | |
| Travelers Indemnity Co.,<br>     *Defendant*. | April 28, 2011 |

RULING ON MOTIONS

Plaintiff Vickie Sherman, who represents herself, sued Defendant Travelers Indemnity Co. ("Travelers") for violations of the Age Discrimination in Employment Act ("ADEA"), 28 U.S.C. §§ 621, *et seq.*, claiming that in 2008, when she was 55 years old, her management responsibilities were transferred to a 36 year–old individual.  Plaintiff moves to amend her complaint to request injunctive relief, and Defendant moves to dismiss and compel arbitration of her claims.

I.     Background

Plaintiff began working for Aetna's property/casualty businesses in 1975 and continued after Aetna merged with Travelers in 1996 until 2008.  Since the time of the merger, Travelers has continually had an employment arbitration policy ("Arbitration Policy"), which it identifies as one of the key obligations in its Code of Business Conduct and Ethics, and which provides in its current form:

> The Policy makes arbitration the required and exclusive forum for the resolution of all employment–related and compensation related disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and the Company or its current and former parents, subsidiaries and affiliates and its and their current and former officers, directors, employees, and agents (and that are not resolved by the internal dispute resolution procedure), including

> without limitation contractual claims and claims, demands or actions under
> . . . the Age Discrimination in Employment Act of 1967 . . . and any other
> federal, state or local statute, regulation or common law doctrine regarding
> employment discrimination, conditions of employment or termination of
> termination.

(Ex. B to Bernstein Aff. [Doc. # 9].)  Any proceeding under the Arbitration Policy "must be brought within the time period provided for within the statute(s) of limitations applicable to the claims asserted by the claimant." (*Id.*)

According to Diane Bengston, Travelers Senior Vice President for Human Resources since 2002, the employment dispute arbitration policy was distributed to Travelers' employees in its original or revised forms in 1996, 1998, 2001, 2002, 2003, 2004, 2005, 2007, and 2008, and Travelers' vendor records reflect that Plaintiff opened an email from John Clifford, then the Executive Vice President of Human Resources on January 2, 2008 advising of updates and clarifications about the arbitration policy.  Plaintiff clicked the embedded link in the email regarding the employment Arbitration Policy updates, thereby indicating that she had read, understood, and agreed to abide by the policy.  (Bengston Aff. [Doc. # 11] ¶ 19.)

The Arbitration Policy, a "key obligation" in the Travelers Code of Business Conduct and Ethics, is specifically referenced in the "Employee Policies and Dispute Resolution" section, which provides that "[a]dherence to these policies and procedures is required," "all employees are required to certify their agreement to this Code of Conduct and all policies referenced herein," and "[a] condition of continued employment is annual certification of this Code of Conduct." (Ex. A to Bernstein Aff.)  Plaintiff certified her receipt and current agreement with the Code in 2006 and 2007 through an on–line certification program administered by a third party vendor.  (Bernstein Aff. ¶ 13; Ex. D to Bernstein Aff.)

During 2007 and 2008, Travelers restructured itself, and during that period, Plaintiff applied for two newly–available positions but was hired for neither.  She alleges that during this restructuring, her two "backup employees were taken away" and assigned to report to a new manager, Carrie Unze, who was 36 or 37 years old.  Plaintiff resigned in February 2008.

II.    Discussion

Defendant moves to dismiss and to compel arbitration under the Arbitration policy. Under the FAA, written agreements to arbitrate "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* at § 4.

Plaintiff disputes neither the validity of the Arbitration Provision nor Bengston's and Bernstein's averments that Plaintiff had electronically signed it and the Code of Conduct, indicating that she read and understood their terms.  Rather, Plaintiff argues that she "does not recall or believe there is an on–line quiz regarding [a]rbitration procedures" and "believed that [a]rbitration was an avenue for conflicts within the workplace when both parties agreed." (Mem. Opp'n [Doc. # 27] at 1.)  Neither the language of the Arbitration Policy nor the Code provides a basis for Plaintiff's belief that conflicts were subject to the Arbitration Policy only where both parties agreed to submit to arbitration, since the "Scope of the [Arbitration] Policy" section expressly "makes arbitration the *required and exclusive forum for the resolution of all* employment–related disputes," with no qualification that employees must consent to arbitration of individual employment disputes.  (*See* Ex. B to

Bernstein Aff. ¶ 1.)  By electronically signing the Arbitration Policy and Defendant's Code of Conduct, which incorporated the Arbitration Policy, Plaintiff contractually bound herself to arbitrate all employment–related disputes, including this ADEA claim.  *See Morales v. Rent–A–Center*, 306 F. Supp.2d 175, 181 (D. Conn. 2003) (a party's signature on  an arbitration agreement is presumptive evidence that an agreement was formed, given that "[a] person who signs a contract is presumed to know its contents and assent to them" (internal citations omitted)).[1]

Plaintiff also contends that the statute of limitations for initiating an arbitration by either party has lapsed, referring to earlier versions of the Arbitration Policy, such as the 1996 version,[2] which was superceded by amendment on January 2, 2008.  The operative Arbitration Policy provides that claims for arbitration "must be brought within the time period provided for within the statute(s) of limitations applicable to the claims asserted by the claimant."  Since it is undisputed that Plaintiff timely filed her EEOC charge and timely commenced suit within the applicable ADEA limitations period, which had not lapsed at the time Defendant filed its motion to compel arbitration in response to the Complaint, arbitration of the parties' disputes is not time barred.

---

[1] That Plaintiff electronically signed the Arbitration Policy and Code of Conduct rather than signing the contracts in ink is of no consequence, given that "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form."  15 U.S.C. § 7001(a)(1); *see also Specht v. Netscape Comm'n Corp.*, 306 F.3d 17, 26 & n.11 (2d Cir. 2002) (quoting *id.*).

[2] Claims for arbitration "must be brought within one year of the act or omission giving rise to the controversy.  This time period may be extended, however, by any circumstance that would otherwise toll the applicable statute of limitations, *but in no event shall the time for initiating an arbitration be extended beyond two years.*"  (1996 Employee Handbook, Ex. A to Bengstom Aff. at 87 (emphasis added).)

4

Finally, Plaintiff maintains that as a general matter, "arbitration would NOT provide a fair and reasonable solution to this lawsuit."  Notwithstanding her view, she agreed to arbitrate all disputes that arise under the ADEA, and the Supreme Court has confirmed that the "ADEA does not preclude arbitration of claims brought under the statute," *see 14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 at * 1465 (2009); *Gilmer v. Interstate*, 500 U.S. 20, 26–33 (1991), because "if Congress intended the substantive protection afforded by the ADEA to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history," and "nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." *Gilmer*, 500 U.S. at 26-27.

Accordingly, Defendant's motion to dismiss and compel arbitration will be granted. *See Lewis Tree Service, Inc. v. Lucent Technologies, Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) ("Because all of Ironman's claims are subject to arbitration, no useful purpose will be served by granting a stay of Ironman's claims and thus its action against the defendants is dismissed.") (citing *Seus v. John Nuveen & Co, Inc.*, 146 F.3d 175, 178 (3d Cir. 1998) ("If all the claims involved in an action are arbitrable, the court may dismiss the action instead of staying it.")).

III.    Conclusion

For the foregoing reasons, Defendant's [Doc. # 24] Motion to Dismiss and Compel Arbitration is GRANTED.  Because Plaintiff's dispute with her former employer is subject to arbitration, and her suit will be dismissed, Plaintiff's [Doc. # 28] Motion to Amend her Complaint to add claims for injunctive relief would be futile, and her Motion is DENIED. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of April, 2011.